[No. S055400. Aug. 26, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
JESUS SANDOVAL MACIAS, Defendant and Appellant.

**COUNSEL**

Charles R. Khoury, Jr., under appointment by the Supreme Court, and Howard C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Keith I. Motley, Esteban Hernandez and Janelle Marie Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

CHIN, J.—We decide here whether the prosecution may impeach a minor defendant at a criminal trial with the inconsistent statements he made to a probation officer who was evaluating him in preparation for a juvenile court fitness hearing under Welfare and Institutions Code section 707, subdivision

(c) (section 707(c)).[1] We have ruled that a minor's statements made during a fitness evaluation may not be used as substantive evidence of guilt against the minor at a subsequent criminal trial. (*Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 810 [210 Cal.Rptr. 204, 693 P.2d 789] (*Ramona R.*).) But *Ramona R.* specifically reserved the question whether the prosecution could use those same statements to impeach the minor. (*Ramona R., supra,* 37 Cal.3d at p. 807, fn. 2.)

The Court of Appeal reversed defendant's conviction, holding that the prosecution improperly used statements defendant made to his probation officer in anticipation of a juvenile court fitness hearing (in which he was statutorily presumed unfit for juvenile court adjudication) to impeach him at his subsequent trial. The court relied on dictum from a subsequent case observing generally that *Ramona R., supra,* 37 Cal.3d 802, involved legislatively compelled statements that under the federal Constitution could not be used against a minor defendant "for any purpose." (*People v. May* (1988) 44 Cal.3d 309, 317 [243 Cal.Rptr. 369, 748 P.2d 307] (*May*), citing *New Jersey v. Portash* (1979) 440 U.S. 450, 458-459 [99 S.Ct. 1292, 1296-1297, 59 L.Ed.2d 501] (*Portash*); see also *People v. Markham* (1989) 49 Cal.3d 63, 69 [260 Cal.Rptr. 273, 775 P.2d 1042] (*Markham*).) The Court of Appeal concluded it was "duty-bound to follow *May*'s unequivocal guidance unless and until the Supreme Court revisits the issue and determines to abandon its dicta and state a different rule." We conclude *May*'s dictum is not controlling here.

First, in contrast to the present case, *May* neither addressed the impeachment issue nor observed that *Ramona R.* specifically left it open. The Court of Appeal was not bound, therefore, by stare decisis principles to follow the *May* dictum. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753-755; *id.* (1996 supp.) Appeal, § 783, p. 236, and cases cited.)

Second, although we confirm *Ramona R*'s rule of substantive use immunity because it encourages minors to provide probation officers with truthful statements and protects them from prosecutors who may take unfair advantage of their statements as substantive evidence of guilt (*Ramona R., supra,* 37 Cal.3d at pp. 809-810), we do not agree with the Court of Appeal that *Ramona R*'s holding should extend to impeachment of inconsistent testimony a minor defendant volunteers during his adult criminal trial. *Ramona R.* based its substantive use immunity on the theory that the fitness evaluation review forced the minor to choose between the " ' "trilemma of self-accusation, perjury or contempt," ' " which our state Constitution does not

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

permit. (*Ramona R.*, *supra*, 37 Cal.3d at pp. 809-810.) By contrast, our state Constitution does not protect defendants from impeachment when their voluntary trial testimony is inconsistent with their immunized statements. (Cf. *People* v. *Coleman* (1975) 13 Cal.3d 867, 892 [120 Cal.Rptr. 384, 533 P.2d 1024] (*Coleman*) [inconsistent statements during probation revocation hearing may be used to impeach probationer at criminal trial].) In addition, *Ramona R.* intended use immunity to encourage minors to make candid statements and to prevent prosecutors from taking unfair advantage of a minor's admission or silence by using it substantively against the minor at a subsequent trial. (*Ramona R.*, *supra*, 37 Cal.3d at pp. 806, 810, fn. 3.) We do not serve the same purposes by precluding impeachment of a minor who voluntarily testifies falsely at trial. We therefore reverse the Court of Appeal judgment barring the use of defendant's statements for impeachment purposes.[2]

## I. FACTS AND PROCEDURAL HISTORY

In June 1992, defendant and Alfredo Flores smuggled a group of persons from Mexico in a stolen Chevrolet Suburban. They picked up the passengers next to the freeway near San Ysidro, a town close to the international border. Defendant drove the van, and Flores sat in the front seat next to him. The passengers lay across the van's floor.

When defendant stopped at a gas station, he and Flores noticed that immigration officials were following them. Defendant drove off, bypassing the Temecula border patrol checkpoint. Witnesses at various points in the Suburban's path testified that the driver proceeded erratically, quickly passing stopped cars and detouring around a construction area.

A border patrol agent followed the Suburban into a shopping center at Rancho California and Ynez, and then west on Rancho California. The Suburban drove over a center median into the eastbound lanes of traffic on the wrong side of the road, proceeded up a sloping sidewalk, and then made a U-turn before driving into the eastbound lanes of traffic and through a red light at an intersection.

---

[2]In his petition for review and opening brief, the Attorney General phrases the issue as whether a minor's statements made "in connection with a juvenile fitness hearing" may be used to impeach him at his subsequent trial. Defendant asserts that the Attorney General "incorrectly framed" the issue because he did not testify at the fitness hearing. Defendant claims that the broad issue statement requires us to dismiss the case as improvidently granted. We disagree. As in *Ramona R.*, the rule we announce today applies equally to statements made to probation officers during fitness evaluations and testimony given by minor defendants at fitness hearings. (*Ramona R.*, *supra*, 37 Cal.3d at p. 810 [forbidding substantive use of either fitness hearing testimony *or* statements made to probation officers in preparation for fitness hearings].)

The high-speed chase continued through the streets of Temecula. It ended in tragedy when the Suburban sped into a blind intersection near Temecula Valley High School and collided with an Acura sedan, killing two young passengers and the adult driver in the sedan and one passenger inside the Suburban. It then overturned and slid forward, striking two young pedestrians in the crosswalk and killing them.

A petition filed in juvenile court alleged that defendant, who was 16 years old at the time of the collision, committed 6 murders (Pen. Code, § 187) and operated a motor vehicle without a valid driver's license (Veh. Code, § 12500, subd. (a)). The prosecution sought to have him tried as an adult, and a hearing was held to determine if he was fit to be tried as a minor. (§ 707, subds. (b)(1), (c).) In preparation for the hearing, Riverside County Probation Officer Alex Candelaria prepared a report on defendant's behavioral patterns and social history. In preparing this report, Candelaria interviewed defendant in Spanish in the company of his defense attorney. Defendant told Candelaria that he had a cousin in Pomona and an aunt in Ontario. He also said his brother taught him how to drive an automatic transmission vehicle three months before he came to the United States. He explained that a man named Morro smuggled him into the United States the night before the fatal collision, and that Flores forced him to drive the Suburban.

Defendant also told Candelaria that he said to Flores he wanted to stop the car, but Flores cursed at him, reached over with his foot, and placed it on top of defendant's foot on the accelerator. Flores and defendant struggled for control of the steering wheel. Because Flores's foot was on top of defendant's foot, defendant could not stop the car, and the crash occurred. Defendant did not tell the probation officer that Flores had threatened to kill him.

After reviewing the probation officer's social study report on defendant's amenability to the care, treatment, and other programs available to defendants tried as minors, the court concluded defendant should be tried as an adult. (§ 707(c).)

Defendant's testimony during his criminal trial contradicted many statements he made to Probation Officer Candelaria. For example, he stated that he was born in Mexico City and that a man named Sergio smuggled him into the United States when he was 15 years old, about 9 months before the collision. He testified that he learned to drive a standard transmission vehicle in Mexico City when he was 11 years old. He said he had no friends or family in the United States. He stated that he joined Flores following his former employer's arrest. He also said that he had worked for Flores as a servant and messenger for six months before the incident, but had nothing to do with the smuggling operations. He said he feared Flores, who threatened

him with death, and he believed that, had he stopped the Suburban during the fatal chase, Flores would have killed him. He wanted to stop, but Flores directed him to "go faster." Defendant said he followed Flores's orders because he feared for his life.

During cross-examination at his criminal trial, defendant claimed that he lied to the probation officer during his prehearing interview. Probation Officer Candelaria then impeached defendant on rebuttal by repeating his interview statements that were inconsistent with his trial testimony. The jury found defendant guilty of driving without a valid license and of six counts of second degree murder.[3]

## II. Background

Juvenile court jurisdiction attaches to any minor under the age of 18 who "violates any law of this state." (§ 602.) The prosecution may move to have minors 14 years of age or older tried as adults. (§ 707, subds. (a), (c) [applicable to minors 16 and older]; see § 707, subd. (d) [applicable to minors between 14 and 16].) On the prosecution's motion made before jeopardy attaches, the court "shall cause the probation officer to investigate

---

[3]After closing trial arguments, both parties requested the trial court to instruct the jury as follows: "Evidence that on some former occasion a witness made a statement or statements that were inconsistent or were consistent with his or her testimony in this trial may be considered by you not only for the purpose of testing the credibility of the witness but also as evidence of the truth of the facts as stated by the witness on such former occasion." (CALJIC No. 2.13.) Defendant did not request, and the court did not provide, a cautionary instruction limiting the use of his statements to impeachment purposes only. Defendant now claims for the first time on appeal that the trial court owed a sua sponte duty to instruct the jury that it could use the probation officer's testimony and the impeachment of defendant during cross-examination for the purpose of determining his credibility and not as substantive proof of guilt. (See, e.g., CALJIC No. 2.13.1.) Of course, we need not consider "any issue that could have been but was not timely raised in the briefs filed in the Court of Appeal." (Cal. Rules of Court, rule 29(b)(1).) Moreover, absent a request by defendant, the trial court has no sua sponte duty to give a limiting instruction. (Evid. Code, § 355 [trial court must restrict evidence to its proper scope and so instruct the jury if a party requests a limiting instruction]; see *People* v. *Nudd* (1974) 12 Cal.3d 204, 209 [115 Cal.Rptr. 372, 524 P.2d 844] [Evidence Code section 355 does not require sua sponte limiting instruction], revd. on other grounds in *People* v. *Disbrow* (1976) 16 Cal.3d 101, 113 [127 Cal.Rptr. 360, 545 P.2d 272].) Finally, under the doctrine of invited error, a defendant may not complain of an erroneous instruction given at his own request. (See, e.g., *People* v. *Daya* (1994) 29 Cal.App.4th 697, 713-714 [34 Cal.Rptr.2d 884].)

Nonetheless, we observe that, in future cases, defense counsel should seek a limiting modification of CALJIC No. 2.13, informing the trier of fact that a prosecutor may use a minor's statements made during his section 707, subdivision (a), fitness evaluation for impeachment purposes only. Here, even if we did find instructional error, we would find it harmless. The record shows the statements defendant made to his probation officer were less inculpatory than his trial statements, and the evidence implicating defendant in the six deaths was overwhelming. (Cf. *People* v. *Wharton* (1991) 53 Cal.3d 522, 571-572 [280 Cal.Rptr. 631, 809 P.2d 290].)

and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness." (§ 707, subd. (a).) The statute also allows the minor (and the prosecution) to present all "relevant evidence" that would assist the court in making its fitness determination. (§ 707, subd. (a).) Section 707 does not require the minor to speak to the probation officer during this evaluative period or the probation officer to interview the minor before reporting to the court. If a probation officer's interview occurs, its purpose is not to elicit evidence of guilt, but instead to assemble relevant information that would allow the court to make an informed evaluation of the minor's fitness for treatment as a juvenile. (*In re Wayne H.* (1979) 24 Cal.3d 595, 599-560 [156 Cal.Rptr. 344, 596 P.2d 1] (*Wayne H.*).)

Following submission and consideration of the probation officer's report and any other relevant evidence that the minor or the prosecution presents, the court may find the minor unfit for juvenile court proceedings unless it concludes ". . . the minor would . . . be amenable to the care, treatment, and training program available through the facilities of the juvenile court . . . ." (§ 707, subd. (a).) In reaching its determination, the court must evaluate five criteria, with any one or a combination of factors being sufficient to support a finding that the minor is unfit for juvenile court proceedings: "(1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor." (§ 707, subd. (a).)

If the petition alleges the minor committed specific enumerated felonies, including murder (§ 707, subd. (b)(1)), the minor is *presumed* unfit following submission of the probation officer's report (along with the minor's and prosecution's other relevant evidence). (§ 707(c).) The minor must then rebut the presumption by a preponderance of evidence showing that he would be amenable to treatment through the juvenile court under the identical five criteria listed above. (§ 707(c).) The presumption stands "unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating circumstances, that the minor would be amenable to the care, treatment, and training program available through the facilities of the juvenile court . . . ." (§ 707(c).) As in the section 707, subdivision (a), evaluation, the minor is not required to speak to the probation officer who prepares the probation report. (§ 707(c).)

In this case, the statutory unfitness presumption applied because the petition alleged defendant committed murder. The court concluded defendant did not rebut the presumption and ordered him tried as an adult.

 As noted, section 707 does not require that a minor defendant speak to the probation officer during the evaluative period. Nonetheless, in cases decided before 1982, when the electorate adopted Proposition 8's Right to Truth-in-Evidence provision (Cal. Const., art. I, § 28, subd. (d)), we recognized that the prosecution could not use statements a juvenile made to a probation officer and a court in a fitness hearing substantively against that juvenile at trial. (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079] (*Bryan*).) To allow substantive use of the evidence against the juvenile, we believed, would violate protections guaranteed by the Fifth Amendment of the United States Constitution, which provides: "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." California secures the right against self-incrimination constitutionally (Cal. Const., art. I, § 15) and by statute (see Evid. Code, § 940 ["To the extent that such privilege exists under the Constitution of the United States or the State of California, a person has a privilege to refuse to disclose any matter that may tend to incriminate him."]).

 Following *Bryan*, *supra*, 7 Cal.3d 575, other cases recognized the importance of use immunity in the juvenile context. For example, *Wayne H.*, *supra*, 24 Cal.3d at page 599, held that statements a minor made to a probation officer in connection with a section 628 juvenile detention hearing are not admissible as substantive evidence in subsequent criminal proceedings.[4] In *Sheila O.* v. *Superior Court* (1981) 125 Cal.App.3d 812, 817 [178 Cal.Rptr. 418] (*Sheila O.*), the Court of Appeal determined that ". . . testimony given by the juvenile at the fitness hearing is inadmissible at the jurisdictional hearing except for the purpose of impeachment." In excepting impeachment evidence from the use immunity rule, *Sheila O.* relied on *Coleman*, *supra*, 13 Cal.3d at page 892, which held that procedural fairness mandates that statements a probationer made during his probation revocation hearing could not be used against him during the prosecution's subsequent case-in-chief. (*Coleman*, *supra*, 13 Cal.3d at p. 892.)

*Coleman* observed, however, that the use immunity did not extend to impeachment once the probationer voluntarily took the stand at the criminal trial. We stated: "Although we have declared a probationer's revocation hearing testimony inadmissible during the prosecution's case in chief, we see no purpose to be served by precluding use of that testimony or its fruits to impeach or rebut clearly inconsistent testimony which the probationer volunteers at his trial. The intent of our exclusionary rule regarding probation revocation hearing testimony is to encourage the fullest possible *truthful*

---

[4]Although both *Bryan*, *supra*, 7 Cal.3d at page 587, and *Wayne H.*, *supra*, 24 Cal.3d at pages 598-599, suggested in dicta that the same statements could not be used to impeach the minor at a subsequent trial, neither case, nor any other pre-Proposition 8 case, squarely held the same statements could not be used for impeachment.

disclosure of relevant facts and circumstances at the revocation hearing by allowing a probationer who does testify at his revocation hearing nonetheless to enjoy unimpaired the full protection of the privilege against self-incrimination at his subsequent trial. This privilege requires the prosecution to prove a defendant's guilt through evidence accumulated through its investigative efforts and not extorted from the defendant himself. While the privilege against self-incrimination does assure an accused of the right to remain silent at his trial, it does not—at least under modern principles of Anglo-Saxon jurisprudence (cf. *United States* v. *Grunewald* (2d Cir. 1956) 233 F.2d 556, 587-592 (appendix to dissenting opinion of Frank, J.), revd. (1957) 353 U.S. 391 [1 L.Ed.2d 931, 77 S.Ct. 963, 62 A.L.R.2d 1344])— encompass a right of an accused to lie in his own behalf at trial." (*Coleman, supra,* 13 Cal.3d at p. 892; see *People* v. *Barnes* (1966) 240 Cal.App.2d 428, 430-433 [49 Cal.Rptr. 470].)

## III. DISCUSSION

In 1982, after the voters amended the state Constitution through Proposition 8 by adding a number of anticrime measures, including the Right to Truth-in-Evidence Law (Cal. Const., art. I, § 28, subd. (d)), we again considered whether use immunity applied in the juvenile context in *Ramona R., supra,* 37 Cal.3d 802. There we addressed whether the pre-Proposition 8 juvenile cases discussed above survived the passage of the proposition, which declared: "[R]elevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court." (Cal. Const., art. I, § 28, subd. (d).) Section 28, subdivision (d), of article I of the state Constitution was intended to eliminate judicial precedents interpreting the state Constitution to exclude otherwise admissible evidence. (See *Markham, supra,* 49 Cal.3d at p. 69; *In re Lance W.* (1985) 37 Cal.3d 873, 887 [210 Cal.Rptr. 631, 694 P.2d 744].) The provision contained a savings clause stating, "Nothing in this section shall affect any existing statutory rule of evidence relating to privilege . . . ." (Cal. Const., art. I, § 28, subd. (d).)

In *Ramona R.,* the juvenile court evaluated a 17-year-old girl charged with murder for her fitness for juvenile court proceedings under section 707(c). (*Ramona R., supra,* 37 Cal.3d at p. 805.) After her guardian was shot and killed, the minor agreed to take a lie detector test, but declined to make a statement to the probation officer on the advice of her attorney. (*Ibid.*) In a section 707(c) fitness hearing, the minor declined to testify on the advice of counsel and presented no mitigating evidence because her attorney warned her that the evidence could be used against her at a subsequent trial. (*Ramona R., supra,* 37 Cal.3d at p. 805.) The prosecution introduced the lie

detector test results, which indicated the minor had been deceptive in responding to questions about her role in her guardian's murder. (*Id.* at pp. 805-806.) The probation officer concluded in his evaluation report to the court that the minor was not amenable to treatment in the juvenile system, and the court agreed. (*Id.* at p. 806.) When the minor appealed the juvenile court transfer, murder charges were pending against her in superior court.

We issued a writ of mandate directing the juvenile court to vacate the unfitness determination and to conduct a new hearing in which the minor had immunity "from use at trial of any statements she made in the fitness hearing or to her probation officer." (*Ramona R., supra*, 37 Cal.3d at p. 804.) Three separate policies required the use immunity. First, the adversarial nature of our judicial system demands that the prosecution provide sufficient evidence to establish guilt without the aid of the minor's testimony, which would impermissibly lighten the prosecution's burden. (*Id.* at p. 809.) Second, the minor is placed in " ' "the cruel trilemma of self-accusation, perjury or contempt." ' " (*Id.* at pp. 809-810, quoting *Coleman, supra*, 13 Cal.3d at p. 878.) Though we recognized the minor would not face contempt for silence, she would lose the opportunity to present a convincing case that she was fit for juvenile court treatment, including evidence of potentially mitigating factors. Moreover, because the minor bears the burden of overcoming the presumption, a conclusion of unfitness might flow directly from her silence. The failure to communicate essential information to either the probation officer or the court may be considered evidence of uncooperativeness. (*Ramona R., supra*, 37 Cal.3d at p. 810, fn. 3 and accompanying text.) Finally, we observed that "the certification of a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.' " (*Id.* at p. 810, quoting Note, *Separating the Criminal from the Delinquent: Due Process in Certification Procedure* (1967) 40 So.Cal.L.Rev. 158, 162.) Hence, we concluded that the consequences of deciding between silence and incrimination are so severe that they warrant substantive use immunity for statements the minor makes in preparation for a fitness hearing. (*Ramona R., supra*, 37 Cal.3d at p. 810.)

*Ramona R.* held that California Constitution, article I, section 28, subdivision (d), did not affect the use immunities California courts had previously recognized, including the immunity recognized in *Bryan, supra*, 7 Cal.3d 575. (*Ramona R., supra*, 37 Cal.3d at pp. 808-809.) We depicted use immunity as an integral part of the California constitutional privilege against self-incrimination. We observed that Evidence Code section 940 preserved all these privileges existing under either the California or the United States Constitution. (*Ramona R., supra*, 37 Cal.3d at p. 808.) Because California Constitution, article I, section 28, subdivision (d), excepted "existing statutory rule[s] of evidence relating to privilege," including Evidence Code

section 940, *Ramona R.* concluded that Proposition 8 left the juvenile substantive use immunity rule intact. (*Ramona R., supra,* 37 Cal.3d at pp. 808-811.)

The immunity granted in *Ramona R.,* however, dealt expressly with the *substantive use* of the statements to prove guilt. Perhaps recognizing that statements made to a probation officer should not receive the same cloak of immunity at a subsequent trial in which a juvenile voluntarily and inconsistently testifies on her own behalf, the *Ramona R.* court specifically refused to address the question whether statements made to a probation officer in preparation for a fitness hearing could be used to impeach a minor who voluntarily testifies falsely at her subsequent trial. (*Ramona R., supra,* 37 Cal.3d at p. 807, fn. 2.)

■ Three years later, we decided *May.* There the issue was whether a previously recognized exclusionary rule that barred impeachment with prior inconsistent statements elicited in violation of *Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974] (*Miranda*) had survived Proposition 8's Right to Truth-in-Evidence provisions. (*May, supra,* 44 Cal.3d at p. 311.) *May* held that Proposition 8 abrogated the exclusionary rule, and that prior inconsistent statements elicited in violation of *Miranda* could be used to impeach the defendant. (*May, supra,* 44 Cal.3d at pp. 315-317.) *May* also concluded that Proposition 8 had abrogated *People* v. *Disbrow, supra,* 16 Cal.3d 101, which held that those statements were inadmissible for impeachment purposes. (*May, supra,* 44 Cal.3d at p. 315.) *May* classified the *Disbrow* rule as a remedial rule based on independent state grounds under the state Constitution and contrary to the federal rule of *Harris* v. *New* York (1971) 401 U.S. 222 [91 S.Ct. 643, 28 L.Ed.2d 1], which allowed defendant's statements obtained in violation of *Miranda* for impeachment purposes. (*May, supra,* 44 Cal.3d at pp. 318-319.)

*May* interpreted California Constitution, article I, section 28, subdivision (d), as follows: "[T]he 'Truth-in-Evidence' provision of our Constitution was probably intended by the California voters as a means of (1) abrogating *judicial* decisions which had required the exclusion of relevant evidence solely to deter police misconduct in violation of a suspect's constitutional rights under the state Constitution, while (2) preserving *legislatively* created rules of privilege insulating particular communications, such as the attorney-client or physician-patient privilege." (*May, supra,* 44 Cal.3d at p. 318, original italics; see Comment, *Reevaluation of the California Corpus Delicti Rule: A Response to the Invitation of Proposition 8* (1990) 78 Cal.L.Rev. 1571, 1586-1590.) *May* then concluded that Proposition 8 was intended to abrogate "cases such as *Disbrow,* which had elevated the procedural rights of

the criminal defendant above the level required by the federal Constitution, as interpreted by the United States Supreme Court." (*May, supra*, 44 Cal.3d at p. 318.) We observed that the "federal rule announced in *Harris* v. *New York, supra*, 401 U.S. 222, allowing impeachment by the defendant's prior statements taken in violation of *Miranda*, may have been based on the premise that the privilege against self-incrimination cannot be invoked by one who has voluntarily taken the witness stand to testify concerning the subject matter of his prior statement. [Citations.] As *Harris* explains, 'Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. *But that privilege cannot be construed to include the right to commit perjury.* [Citations.]' (401 U.S. at p. 225 [28 L.Ed.2d at p. 4], italics added.) Thus, it seems reasonable to conclude that no privilege, statutory or otherwise, protected defendant from impeachment in this case." (*May, supra*, 44 Cal.3d at p. 319.)

In an apparent attempt to distinguish *Ramona R., supra*, 37 Cal.3d at pages 807-808, and preserve the substantive use immunity provided specifically for juveniles, *May* suggested in dictum that a juvenile's statements to his probation officer could not be used "for any purpose" at a subsequent trial because those statements were "legislatively compelled," based on the presumption of unfitness, in contrast to the statements elicited in violation of *Miranda* in *May*. (*May, supra*, 44 Cal.3d at p. 317; see also *Markham, supra*, 49 Cal.3d at pp. 68-69 [noting *May* dictum].)

■ *May's* brief discussion of *Ramona R.'s* reasoning, however, was unnecessary to our holding in *May*. The majority in *Ramona R.* never characterized the probation evaluation as compelling a minor's testimony; if it had, it could not have left open the impeachment question. (See *Portash, supra*, 440 U.S. at pp. 458-459 [99 S.Ct. at pp. 1296-1297] [forbidding use of compelled statements made during grand jury hearing for any purpose at subsequent trial].)[5] Section 707(c) does not require the minor to speak during the probation evaluation period, and indeed provides the minor with alternatives during the evaluation process for producing any mitigating evidence that would rebut the fitness presumption. The purpose of the *Ramona R.* use immunity is to encourage the minor to give the probation officer candid and unencumbered evidence to aid the officer's—and ultimately the court's—determination of the best forum to consider the case. (*Ramona R., supra*, 37 Cal.3d at p. 806.) The grant of immunity also avoids the risk that the prosecution might take unfair advantage of an admission or silence by using it against the minor at a subsequent trial. (*Id.* at pp. 806, 810, fn. 3.) In other words, substantive use immunity allows juveniles to

---

[5]The characterization of statements to a probation officer as compelled testimony is found in Justice Grodin's concurring opinion in *Ramona R., supra*, 37 Cal.3d at pages 811-812.

exercise their right to present mitigating evidence to probation officers without giving prosecutors in subsequent trials the unfair advantage of using their statements as substantive evidence of guilt. (Cf. *Coleman, supra,* 13 Cal.3d at p. 892.) Thus, contrary to *May*'s dictum, nothing in *Ramona R.* would lead us to conclude that it based its substantive use immunity on a finding that the minor's statements to the probation officer were legislatively compelled.

In addition, we can easily distinguish the prosecution's use for impeachment purposes of a juvenile's statements made to a probation officer determining fitness from the use of those statements as substantive evidence of guilt. As discussed (*ante,* at pp. 743-744), nothing in the state Constitution or our judicial decisions protects juveniles from impeachment if their voluntary trial testimony is inconsistent with the substantively immunized statements they made to their probation officers before their fitness hearings. In fact, our cases suggest the opposite. (Cf. *Coleman, supra,* 13 Cal.3d at p. 892.)

Thus, the dissent's suggestion that *Ramona R.* affirmatively decided the impeachment question is misplaced. (Dis. opn. of Mosk, *post,* at pp. 759-760.) Contrary to the dissent, *People* v. *Bonin* (1989) 47 Cal.3d 808 [254 Cal.Rptr. 298, 765 P.2d 460] never discussed fitness hearings or a minor's impeachment in any context. Nor did it claim that *Ramona R.* ever unanimously concluded all statements, including false ones, made by a minor in connection with a fitness hearing were involuntary and inadmissible for impeachment purposes. (See dis. opn., *post,* at pp. 759-760.)

Therefore, although *Ramona R.* requires that a minor's statements made to a probation officer in preparation for a fitness hearing not be used as substantive evidence against the minor at a subsequent trial of the offense (*Ramona R., supra,* 37 Cal.3d pp. 808-810), *Ramona R.*'s rationale allows those statements to be used to impeach a minor who voluntarily takes the stand and then testifies inconsistently with them. Accordingly, we conclude the dictum in *May, supra,* 44 Cal.3d at page 317, inaccurately describing the *Ramona R.* holding, does not preclude the use of defendant's statements for impeachment purposes.[6]

Nor do we interpret *May*'s citation to *Portash* as precluding us from allowing defendant's inconsistent statements to be used for the limited

---

[6]In his answer brief, defendant contends the prosecution granted him use immunity for the probationer's interview and subsequent testimony at the fitness hearing during motions made on August 7 and 11, 1992. Defendant also contends this use immunity grant estops the Attorney General from asserting that the statements defendant made to his probation officer were not compelled and, in addition, requires us to dismiss the case as improvidently granted. Our record review reveals no immunity grant and no grounds for estopping the Attorney General from asserting defendant's statements were not compelled. The prosecution's statements to which defendant refers were taken from the prosecution's trial court motions asking

purpose of impeachment. (*May, supra,* 44 Cal.3d at pp. 317-318; *Portash, supra,* 440 U.S. at pp. 458-459 [99 S.Ct. at pp. 1296-1297].) In *Portash,* after the prosecutor granted him immunity, the defendant testified before the grand jury. (*Portash, supra,* 440 U.S. at p. 451 [99 S.Ct. at p. 1293].) At the subsequent criminal trial for extortion, the court ruled defendant's grand jury testimony was admissible to impeach his credibility if he chose to testify. The United States Supreme Court disagreed, holding that involuntary or coerced statements could not be used *for any purpose* at a subsequent trial, as use of involuntary statements amounted to a due process denial. (*Id.* at pp. 459-460 [99 S.Ct. at pp. 1297-1298].) "Testimony given in response to a grant of legislative immunity is the essence of coerced testimony. [In this grand jury proceeding,] . . . the witness is told to talk or face the government's coercive sanctions, notably, a conviction for contempt." (*Id.* at p. 459 [99 S.Ct. at p. 1297].) Testimony provided in a grand jury hearing without a grant of immunity, however, is not involuntary. (*People* v. *Alcocer* (1991) 230 Cal.App.3d 406, 410-412 [282 Cal.Rptr. 5] (*Alcocer*).)[7]

We agree with the Court of Appeal and defendant that *Portash* forbids the use in any criminal trial of *involuntary* statements that a defendant gave following a use immunity grant. But we do not believe *Portash* prohibits the limited use of statements made to a probation officer in preparation for a juvenile fitness hearing to impeach the same minor defendant's voluntary, inconsistent trial statements.

The United States Supreme Court has recognized that *Portash* was a unique and limited case, demonstrating the essence of coerced testimony in

the court to find defendant unfit for juvenile court proceedings, and from the supporting memorandum of points and authorities, filed before the probation officer's report, but to be considered along with it on September 23, 1992, at the juvenile fitness hearing. In those motions, the prosecution stated that "[s]tatements made by the minor to the probation officer who is preparing the fitness report and testimony at the fitness hearing may not be used against the minor at a subsequent trial. Use immunity applies. [Citation to *Ramona R., supra,* 37 Cal.3d 802.]" The prosecution's statement simply informs the court of the holding in *Ramona R., supra,* 37 Cal.3d 802. It does not support defendant's claim that the prosecution granted him any immunity against use for impeachment in exchange for his statements to the probation officer. Neither does it require this court to dismiss the case as improvidently granted.

[7]The Attorney General cites *Alcocer, supra,* 230 Cal.App.3d 406, and *Izazaga* v. *Superior Court* (1991) 54 Cal.3d 356 [285 Cal.Rptr. 231, 815 P.2d 304], as support for his contention that the *Portash* holding is limited to grand jury testimony given under an express immunity grant. Defendant contends that the Attorney General erroneously relies on the *Alcocer* holding because the *Alcocer* court refused to read *Portash, supra,* 440 U.S. 450, "to mean any testimony given in grand jury proceedings can never be used against the testifier in a later proceeding because it is compelled." (*Alcocer, supra,* 230 Cal.App.3d at p. 412.) We conclude that, in citing *Alcocer,* the Attorney General was simply recognizing that "At least one appellate court has construed *Portash*'s reach quite narrowly."

the "classic Fifth Amendment" sense because a witness who had been given use immunity was later ordered to testify or face contempt sanctions. (See *South Dakota* v. *Neville* (1983) 459 U.S. 553, 563-564 [103 S.Ct. 916, 922-923, 74 L.Ed.2d 748] (*Neville*) [no *Portash* Fifth Amendment violation in allowing admission of trial evidence of defendant's refusal to submit to blood-alcohol test].) In *Neville*, the high court observed that the defendant's decision whether to take a blood-alcohol test was not legislatively compelled in the *Portash* sense unless he could show that the consequences of his decision either to submit or to refuse the request were so severe as to remove effectively his free will to choose. (*Neville, supra*, 459 U.S. at p. 562 [103 S.Ct. at pp. 921-922].)

The high court has also observed that a probationary defendant's general obligation to appear and answer questions truthfully does not convert otherwise voluntary statements into compelled statements. (*Minnesota* v. *Murphy* (1984) 465 U.S. 420, 431-435 [104 S.Ct. 1136, 1144-1146, 79 L.Ed.2d 409] (*Murphy*).) In *Murphy*, the defendant sought suppression of his statements to a probation officer with whom he was required to meet as a condition of probation. The court concluded the statements were admissible at the defendant's criminal trial, notwithstanding the officer's failure to advise defendant of his privilege against self-incrimination. (*Id.* at pp. 429-430 [104 S.Ct. at pp. 1143-1144]). The defendant was not compelled to make the statements he volunteered to the probation officer, even though he was subject to a court order to respond truthfully and despite his probation officer's threats of revocation if he lied. (*Id.* at p. 440 [104 S.Ct. at p. 1149].)

Other federal cases have explicitly allowed the limited use for impeachment of otherwise protected statements elicited from defendants in a variety of circumstances. ■ For example, evidence seized illegally in violation of the Fourth Amendment is admissible to impeach a testifying defendant. (*United States* v. *Havens* (1980) 446 U.S. 620, 626 [100 S.Ct. 1912, 1916, 64 L.Ed.2d 559].) ■ A prosecutor may impeach the defendant with statements he made during plea negotiations. (*United States* v. *Mezzanatto* (1995) 513 U.S. 196 [115 S.Ct. 697, 130 L.Ed.2d 697].) Likewise, a defendant's voluntary statements to police in violation of *Miranda* are admissible for impeachment. (*Harris* v. *New York, supra*, 401 U.S. at p. 225 [91 S.Ct. at pp. 645-646].) In *Harris*, the defendant, charged with selling narcotics, chose to take the stand and deny selling heroin to undercover police officers. (*Id.* at p. 223 [91 S.Ct. at pp. 644-645].) On cross-examination, the prosecution impeached defendant with statements he made to the police during an interrogation in which police failed to give *Miranda* warnings. (*Harris* v. *New York, supra*, 401 U.S. at p. 223 [91 S.Ct. at pp. 644-645].) The high court held the impeachment proper, because *Miranda* rights do not give

defendants a "license to use perjury," and the exclusion from substantive use adequately protects their rights. (*Harris* v. *New York*, *supra*, 401 U.S. at p. 226 [91 S.Ct. at p. 646].) A section 707(c) hearing and probation officer interview differ from the interrogation in *Harris*, in that the juvenile generally makes the statements with counsel present. In addition, a probation officer is less likely to overreach during a juvenile's evaluation interview under section 707(c) than are police in a custodial interview, because, as we have discussed (*ante*, at pp. 746-747), the probation officer's duty "is not the marshalling of evidence on the issue of guilt, but rather . . . to assist in the evaluation of the minor's fitness for treatment as a juvenile [citation]." (*Wayne H.*, *supra*, 24 Cal.3d at p. 599.)

In a number of comparable circumstances, Courts of Appeal have ratified the rule that a criminal defendant's self-incrimination privilege does not shield the defendant from impeachment with prior inconsistent statements when the defendant chooses to testify at trial. ■ For example, in a dependency hearing that required the father to admit abuse, his rights against self-incrimination and to due process were not violated by his statements' subsequent use to impeach him. (*In re Jessica B.* (1989) 207 Cal.App.3d 504, 521 [254 Cal.Rptr. 883].) ■ Defendant's statements at a motion for new trial on grounds of ineffectiveness of trial counsel receive immunity only from substantive use. (*People* v. *Dennis* (1986) 177 Cal.App.3d 863, 876 [223 Cal.Rptr. 236].) Substantive use of statements in plea negotiations is improper because of the public policy favoring settlement without trial, but those statements are admissible for impeaching the defendant's trial testimony. (*People* v. *Crow* (1994) 28 Cal.App.4th 440, 452 [33 Cal.Rptr.2d 624].) Consistent with these cases, our decision to grant substantive use immunity to statements that a juvenile defendant made in preparation for a section 707(c) fitness hearing, while allowing the use of inconsistent statements for impeachment, protects the juvenile's constitutional rights but refuses to condone or encourage perjury.

## IV. CONCLUSION

Forbidding substantive use of minors' statements at trial does not give the minors the right to perjure themselves. In this case, defendant lied to his probation officer in an effort to be tried as a juvenile for his crimes. When that strategy failed, and the court found he should be tried as an adult, he told a different story at his criminal trial, eventually admitting he lied to his probation officer. Defendant does not claim he spoke to the probation officer involuntarily; his counsel was present throughout the interview.

Accordingly, we affirm our holding that statements minors make to probation officers in preparing for section 707 juvenile fitness hearings may

not be used as substantive evidence of guilt during subsequent trials of their offenses. (*Ramona R., supra,* 37 Cal.3d at p. 810.) Today we answer the question left unresolved in *Ramona R.* by holding that statements made in connection with juvenile fitness hearings are not legislatively compelled, and, absent some demonstration of involuntariness, they are admissible for the sole purpose of impeachment at the defendants' subsequent trials. As defendant voluntarily made statements to the probation officer in preparation for his fitness hearing, the trial court properly allowed his impeachment with those statements when he chose to testify inconsistently during his criminal trial. We therefore reverse the Court of Appeal's judgment.

George, C. J., and Werdegar, J., concurred.

**BAXTER, J., Concurring.—** ■ I agree that statements to a probation officer in anticipation of a fitness hearing (Welf. & Inst. Code, § 707, subd. (c)) are admissible for impeachment. I therefore join in the judgment.

I do not agree, however, that we should reaffirm the rule of *Ramona R.* v. *Superior Court* (1985) 37 Cal.3d 802, 810 [210 Cal.Rptr. 204, 693 P.2d 789] (*Ramona R.*) that such statements are otherwise inadmissible and may not be used as substantive evidence of guilt. The plurality acknowledge that *Ramona R.* reflects a judicially created use immunity, an exclusionary rule crafted to encourage minors to cooperate with the probation officer. The basis on which the *Ramona R.* court held that the California use immunity rule for statements to a probation officer was not nullified by the "Truth-in-Evidence" provision of the California Constitution (art. I, § 28, subd. (d)) was a conclusion that admission of the statements would violate the California constitutional privilege against self-incrimination, which by virtue of Evidence Code section 940, created a privilege that survived Proposition 8. (*Ramona R., supra,* 37 Cal.3d at pp. 808-810.) As the court correctly explained, albeit in dictum, in *People* v. *May* (1988) 44 Cal.3d 309 [243 Cal.Rptr. 369, 748 P.2d 307], and as Justice Grodin noted in his concurring opinion in *Ramona R., supra,* at page 811, the reason *Ramona R.* held that admission of the minor's statements would violate the privilege against self-incrimination was that the court concluded the statements were legislatively compelled and thus involuntary.

The plurality now conclude that these statements are not involuntary, not compelled. It follows that they are not statements obtained in violation of the minor's privilege against self-incrimination and, if relevant, may be admissible for all purposes. Nonetheless, without offering any other explanation or justification for *Ramona R., supra,* 37 Cal.3d 802, that would bring the *Ramona R.* rule within an exclusion to the rule of article I, section 28,

subdivision (d) of the California Constitution, the plurality would reaffirm that rule. I do not join in that aspect of the opinion. Inasmuch as I agree that the minor's statements to the probation officer are not compelled, I concur in the judgment reversing the judgment of the Court of Appeal.

Brown, J., concurred.

**MOSK, J.**—I dissent.

I agree, of course, with the plurality to the extent they reaffirm *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802 [210 Cal.Rptr. 204, 693 P.2d 789] (hereafter *Ramona R.*), which I authored, holding that statements made by a juvenile in connection with a fitness hearing have substantive use immunity. But I disagree with the plurality that "*Ramona R.*'s rationale allows those statements to be used to impeach a minor who voluntarily takes the stand and then testifies inconsistently with them." (Plur. opn., *ante*, at p. 753.) Rather, I conclude that *Ramona R.*'s rationale prevents them from being so used.

In *Ramona R.*, the People moved to have a minor, accused of murder, declared unfit for juvenile court proceedings. The minor declined to be interviewed or make any statement to the probation officer on the ground that any incriminating statement could be used against her at a subsequent criminal trial. She refused to testify at the fitness hearing on the same ground. The juvenile court entered an order finding her unfit. We caused issuance of a writ of mandate to compel the court to vacate the order.

We held that use immunity for statements by a juvenile in connection with a fitness hearing is essential to the privilege against self-incrimination of California Constitution, article I, section 15. As such, it was preserved through Evidence Code section 940 and falls within the exception of California Constitution, article I, section 28, subdivision (d). (*Ramona R., supra,* 37 Cal.3d at pp. 808-809.)

We offered three bases for our conclusion.

First, " 'the privilege against self-incrimination requires the prosecution in a criminal trial to produce sufficient evidence to establish the defendant's guilt *before* he must decide whether to remain silent or to testify in his own behalf.'. . . [I]f the minor's statements to his probation officer or to the court at [a fitness] hearing can be introduced by the prosecution as substantive evidence in the guilt phase, the prosecution's burden is impermissibly lightened." (*Ramona R., supra,* 37 Cal.3d at p. 809, italics in original.)

Second, the use of such statements at trial also undermines another policy underlying the privilege against self-incrimination: our " ' "unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt." ' " (*Ramona R.*, *supra*, 37 Cal.3d at pp. 809-810.) As we explained, although a minor is not faced with contempt if he remains silent, he may well find himself in an analogous predicament. He might seriously incriminate himself if he exercises his right to be heard, particularly where his testimony would consist of a truthful explanation of circumstances relevant to the five criteria of Welfare and Institutions Code, section 707, subdivision (c), surrounding the charged offense. If he remains silent, not only does he lose his opportunity to present a conceivably convincing case for fitness, but he also runs the risk that his silence will be taken as an indication that there are no valid reasons why he should not be found unfit. (*Ramona R.*, *supra*, 37 Cal.3d at p. 810.) To avoid the adverse effects of the foregoing alternatives, a minor may be tempted to speak falsely in a manner which will not damage his defense at a subsequent criminal trial. If the minor refuses to be interviewed by the probation officer, he prejudices his position because the probation officer must present a report at the fitness hearing. At a minimum, the probation officer will relate the minor's failure to give his views. Moreover, he may consider the minor to be uncooperative; but even if he does not, it is unlikely he will recommend that the minor be found fit because he cannot determine for himself whether the minor can be rehabilitated. (*Ibid.*)

Third, "[t]here is a final reason why we hold the California Constitution to require that testimony a minor gives at a fitness hearing or statements he makes to his probation officer may not be used against him at a subsequent trial of the offense. This is because the consequences flowing from his 'trilemma' are significant. The result of a fitness hearing is not a final adjudication of guilt; but the certification of a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.' " (*Ramona R.*, *supra*, 37 Cal.3d at p. 810.)

Underlying our decision, then, was our unanimous conclusion that the statements made by a juvenile in connection with a fitness hearing are *not voluntary*. As we later emphasized, "[o]ur holding [in *Ramona R.*] was based on the premise that in the circumstances there the minor must be deemed to be subject to 'a compulsive sanction against the exercise of the self-incrimination privilege.' " (*People* v. *Bonin* (1989) 47 Cal.3d 808, 853 [254 Cal.Rptr. 298, 765 P.2d 460].)

Although *Ramona R.*, *supra*, 37 Cal.3d 802, did not specifically address the use of a juvenile's statements for impeachment, it follows perforce from

our reasoning therein that they may not be used for that purpose. (Cf. *Mincey v. Arizona* (1978) 437 U.S. 385, 398 [98 S.Ct. 2408, 2416-2417, 57 L.Ed.2d 290] [involuntary statements are inadmissible, under U.S. Const., Amend. V, for any purpose].)

The plurality's policy argument, that a criminal defendant does not have the "right" to commit perjury, is, to borrow from my dissenting opinion in *People* v. *May* (1988) 44 Cal.3d 309, 334 [243 Cal.Rptr. 369, 748 P.2d 307] (dis. opn. of Mosk, J.), nothing more and nothing less than a "straw man." " 'Of course a defendant has no "right to commit perjury." . . . Neither does a defendant have the right to commit murder, and yet the Government may not prove that crime by means of an illegally obtained statement.' " (*Ibid.*)

The plurality's holding will inevitably undermine the integrity and usefulness of fitness hearings. It will impermissibly lighten the burden of the prosecution to prove guilt and place the juvenile in the "cruel trilemma" we described in *Ramona R., supra,* 37 Cal.3d at page 810, because any inconsistent statement could be used against the juvenile and there is " 'considerable potential that a jury, even with the benefit of a limiting instruction, will view prior inculpatory statements as substantive evidence of guilt rather than as merely reflecting on the declarant's veracity. The theory of a limiting instruction loses meaning in this context. . . . To instruct a jury that they are not to consider expressions of complicity in the charged crime as evidence that the speaker in fact committed the charged crime, but only for the purpose of demonstrating that he was probably lying when he denied committing the charged crime, would be to require, in the words of Learned Hand, "a mental gymnastic which is beyond, not only [the jury's] power, but anybody else's." ' " (*People* v. *May, supra,* 44 Cal.3d at p. 329 (dis. opn. of Mosk, J.).)

In this case, as the plurality concede, the jury was not even asked to attempt any such mental gymnastics: It was given *no limiting instruction at all.* Instead, it was instructed to consider the minor's statements both for substantive evidence and for impeachment. I would reverse on that ground alone.

Kennard, J., concurred.

Appellant's petition for a rehearing was denied November 12, 1997. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.