Smith, J., Concurring and Dissenting
I concur with the majority in sections I. through VII. and IX., which comprise the unpublished portion of this opinion. I respectfully dissent from the majority's decision that Proposition 57 applies prospectively only and does not extend to cases such as Suarez's, which were pending final *461 judgment on its effective date. Although there is a general presumption that new laws apply prospectively, Tapia v. Superior Court (1991) 53 Cal.3d 282, 287, 279 Cal.Rptr. 592, 807 P.2d 434, I conclude that Proposition 57 is subject to the exception to that presumption articulated in In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ).
Specifically, Estrada held: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." ( People v. Brown (2012) 54 Cal.4th 314, 323, 142 Cal.Rptr.3d 824, 278 P.3d 1182, fn. omitted ( Brown ).) Brown explained that Estrada "articulate[d] the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." ( Brown , supra , at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ; People v. Conley (2016) 63 Cal.4th 646, 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 ( Conley ) [ Estrada "held that new laws that reduce the punishment for a crime are presumptively to be applied to defendants whose judgments are not yet final"].)
Estrada 's rationale is based on the principle that, " '[o]rdinarily, when an amendment lessens the punishment for a crime, one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest.' " ( People v. Nasalga (1996) 12 Cal.4th 784, 791, 50 Cal.Rptr.2d 88, 910 P.2d 1380 (plur. opn. of Werdegar, J.) ( Nasalga ).) Estrada explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute *1290 imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.... [T]o hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." ( Estrada , supra, 63 Cal.2d at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948 ; see Conley , supra , 63 Cal.4th at p. 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 ["when the Legislature determines that a lesser punishment suffices for a criminal act, there is ordinarily no reason to continue imposing the more severe penalty beyond simply " ' "satisfy[ing] a desire for vengeance" ' "].) In sum, " Estrada stands for the proposition that, 'where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' " ( Nasalga , supra , 12 Cal.4th at p. 792, 50 Cal.Rptr.2d 88, 910 P.2d 1380.)
The majority contends that any finding that Proposition 57 has retroactive application is foreclosed by Brown , notwithstanding the fact that Brown addressed a very different type of statute. Brown appeared to emphasize that the Estrada rule applies only when an amendatory statute reduces the penalty for a particular crime. ( Brown , supra , 54 Cal.4th at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The majority reasons that because Proposition 57 does not directly reduce the penalty for any particular crime, it is not retroactive under Estrada and Brown . Brown , however, considered the question whether a statute temporarily (i.e., for just an eight-month period) increasing good behavior *462 credits for prisoners after sentencing, amounted to a reduction in punishment under Estrada. ( Brown , supra , 54 Cal.4th at pp. 317, 323-324, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The statute at issue in Brown had nothing to do with the punishment or actual sentence facing a defendant for committing a crime. ( Id . at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added ["Instead of addressing punishment for past criminal conduct , the statute addresses future conduct in a custodial setting by providing increased incentives for good behavior."].) Indeed, the statute was enacted as a temporary response to a state "fiscal crisis," and in no way reflected a legislative judgment that certain offenses were erstwhile punished too severely. ( Id. at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182 [a statute increasing conduct credits for good behavior after imposition of sentence "does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent"].)
Proposition 57, on the contrary, expressly aims to facilitate rehabilitative dispositions for minors, based on past criminal conduct, with respect to a limited subset of the most serious crimes (i.e., the crimes for which minors are subject to prosecution in adult criminal court). (See Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141[1] [Proposition 57 was intended to "[s]top the revolving door of crime by emphasizing rehabilitation, *1291 especially for juveniles" by "[r]equir [ing] a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."]; see id ., argument in favor of Prop. 57, p. 58 ["Prop. 57 focuses on evidence-based rehabilitation" by allowing "a judge to decide whether or not a minor should be prosecuted as an adult"].) In order to achieve its stated goal of facilitating rehabilitation, Proposition 57, abolishes the prosecution's ability directly to file criminal charges against minors in adult court, and erases any presumption of unfitness of a minor for purposes of juvenile court jurisdiction over his or her matter. (See, e.g., People v. Superior Court (Walker ) (2017) 12 Cal.App.5th 687, 696, 220 Cal.Rptr.3d 1, review granted Sept. 13, 2017, S243072.) All cases against minors are now required to be filed in juvenile court and, in order to move the case to adult court, the prosecution must bring a transfer motion, whereby it, as the proponent of the motion, shoulders the burden of showing the minor is unfit for the jurisdiction of the juvenile court. ( Welf. & Inst. Code, § 707, subd. (a)(1) & (2) ; Evid. Code, §§ 500, 550.)
Under Proposition 57, it undeniably is harder to prosecute minors in adult court. It follows that Proposition 57 militates against imposition of the maximum punishment for the underlying subset of crimes for which minors can be prosecuted in adult court. (See People v. Pineda (2017) 14 Cal.App.5th 469, 482, fn. 9, 222 Cal.Rptr.3d 269 ( Pineda ) [Proposition 57 provides for "reductions in punishment for a host of penal statutes without need of going to the trouble of enumerating them all"].) Our Supreme Court has recognized, "[transferring] a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.' " ( Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 810, 210 Cal.Rptr. 204, 693 P.2d 789, italics added.)[2] The fact that Proposition 57 *463 makes it more difficult to prosecute minors for specific crimes in adult court, reflects a determination by the voters that minors committing these crimes were, in some instances, punished too severely. (See Pineda , supra , at p. 483, 222 Cal.Rptr.3d 269, italics added ["the voters ... determined criminal punishment for juvenile offenders may be too severe in some cases, namely, those where a judge declines to order the transfer of an offender to a court of criminal jurisdiction-an adjudicatory forum in which there is a greater focus on punishment instead of rehabilitation and greater latitude to impose substantially longer custodial sentences"].) The voters' underlying determination that some minors were erstwhile punished too severely, leads to the "inevitable inference" that the voters intended to extend the opportunity to obtain a rehabilitative disposition under Proposition 57 as broadly as possible. ( *1292 Estrada , supra, 63 Cal.2d at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948 ; see Conley, supra , 63 Cal.4th at p. 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 [the Estrada rule creates a "presumption about legislative intent" with regard to the retroactivity of the amendment at issue].)
Furthermore, the voters approved Proposition 57 in the midst of a "sea change" in "penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders." ( People v. Vela (2017) 11 Cal.App.5th 68, 75, 218 Cal.Rptr.3d 1, review granted Jul. 12, 2017, S242298 ( Vela ).) Courts and legislatures have acted decisively, in recent years, to limit application of the harshest punishments to minors. (See, e.g., Graham v. Florida (2010) 560 U.S. 48, 67, 130 S.Ct. 2011, 176 L.Ed.2d 825 [barring LWOP sentences for minors convicted of nonhomicide offenses]; Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 [barring mandatory LWOP sentences for minors convicted of homicide offenses and requiring consideration of youth-related factors as mitigation at sentencing]; Sen. Bill No. 260 (2013-2014 Reg. Sess.) adding § 3051 to the Penal Code [§ 3051 recognizes the "diminished culpability of juveniles" and provides for mandatory "youth offender parole hearings" for eligible juvenile defendants].) The fact that Proposition 57 was enacted at a time of increased recognition of the "[diminished] culpability and [unique] rehabilitation possibilities" of minors, supports the inference that the voters had determined that the specific crimes at issue were sometimes punished too severely in the case of minors. ( Vela , supra , at p. 75, 218 Cal.Rptr.3d 1.)
In light of Proposition 57's emphasis on rehabilitative dispositions for minors and its potential ameliorative effects on punishment for past criminal conduct, it warrants application of the Estrada exception, whereas the statute at issue in Brown , correctly, did not.[3] (See People v. Francis (1969) 71 Cal.2d 66, 79, 75 Cal.Rptr. 199, 450 P.2d 591 [a potentially favorable amendment, in terms of the discretionary punishment faced by a defendant, is subject to the Estrada rule]; People v. Figueroa (1993) 20 Cal.App.4th 65, 69-70, 24 Cal.Rptr.2d 368 [accord].) I therefore disagree with the majority's view that Proposition 57 is inapplicable to cases that were pending final judgment on its effective date. As in Vela , I would conditionally reverse the *464 instant judgment in order to permit the juvenile court to conduct a fitness hearing as mandated by Proposition 57. Were the trial court to find that Suarez is unfit for a juvenile adjudication, the judgment would be reinstated. If, on the other hand, the juvenile court were to find that it would not have transferred Suarez to adult court in the first instance, his conviction and enhancements would be *1293 deemed juvenile adjudications and the juvenile court would impose an appropriate disposition under juvenile law. (See Vela , supra , 11 Cal.App.5th at pp. 81-82, 218 Cal.Rptr.3d 1, rev.gr.)
The majority posits that applying Proposition 57 retroactively would lead to "absurd results," in that even a hypothetical minor convicted of, and sentenced for, "special circumstance murder" in adult court, would thereby be entitled to a conditional remand for a fitness hearing and the opportunity for a rehabilitative disposition if the judgment in his case were not yet final. (Maj. opn. ante , at pp. 457-58.) The majority's concern about "absurd results" is belied by Proposition 57's stated goal: to facilitate the rehabilitation of minors who have committed the most serious crimes. In light of Proposition 57's emphasis on rehabilitation, extending the opportunity to obtain a rehabilitative outcome as broadly as possible is far from an "absurd result." On the contrary, it gives effect to the voters' determination that specific crimes, in some instances, were erstwhile punished too severely in the case of minors.
In support of its holding that Proposition 57 is not retroactive, the majority next contrasts Proposition 57's amendments relating to juveniles with a separate provision relating to parole eligibility. (Maj. opn. ante , at pp. 456-57.) Specifically, the majority states that the "portions of Proposition 57 applicable only to juvenile offenders contain no express retroactivity provision" but "the provisions relating to eligibility for parole consideration" are made "expressly" retroactive "by making them applicable to '[a]ny person convicted ... and sentenced.' " (Maj. opn. ante , at pp. 456-57.) The majority's assertion is puzzling because the provision concerning parole eligibility does not contain any "express" indication of retroactivity. The provision states: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 32, p. 141.) This language simply reflects the nature of parole, specifically the fact that, in order to be eligible for parole consideration, a person must first be "convicted ... and sentenced." The majority's suggestion that this language "expressly" renders the provision retroactive is misleading.
Finally, the majority believes that the fact that Proposition 57 "mandates that any motion to transfer the minor from juvenile court to criminal court 'must be made prior to the attachment of jeopardy,' " suggests an intent for Proposition 57 to apply prospectively only. (Maj. opn. ante , at p. 457, italics omitted.) However, a conditional reversal and remand of a pending case for a fitness hearing under Proposition 57-as the Vela court ordered in that matter-obviates any concerns about the attachment of jeopardy. Assuming it *1294 is a foregone conclusion that the prosecution would file a motion for a fitness hearing on remand, "[r]eversal of the judgment effectively operates to vitiate the prior attachment of jeopardy." ( Pineda , supra , 14 Cal.App.5th at p. 483, fn. 10, 222 Cal.Rptr.3d 269 ; see Juan G . v. Superior Court (2012) 209 Cal.App.4th 1480, 1494, 147 Cal.Rptr.3d 816 ["voters are presumed to have *465 been aware of existing law at the time an initiative was enacted"].)
Accordingly, I would apply Proposition 57 retroactively to this case.[4]

Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

The Voter Information Guide is available at < http://www.sos.ca.gov/elections/voting-resources/voter-information-guides/> [as of Dec. 4, 2017].

See People v. Macias(1997) 16 Cal.4th 739, 750, 66 Cal.Rptr.2d 659, 941 P.2d 838 ; Marcus W. v. Superior Court(2002) 98 Cal.App.4th 36, 41, 118 Cal.Rptr.2d 919.

It bears mention that when our Supreme Court recently considered the question of retroactivity of Proposition 36 in Conley, it did not hold that application of the Estrada rule was strictly limited to situations where an amendatory statute reduces the penalty for a particular crime, but rather analyzed the application of the Estrada rule to Proposition 36 on other grounds. (See Conley, supra, 63 Cal.4th 646, 203 Cal.Rptr.3d 622, 373 P.3d 435.)

I would also reject the People' argument, based on People v. Villa(2009) 178 Cal.App.4th 443, 452-453, 100 Cal.Rptr.3d 463 (Villa ), that even if Proposition 57 applies retroactively, remand is not required because it is not reasonably probable a juvenile court would retain Suarez's case instead of transferring it to criminal court. In Villa, a juvenile defendant, directly charged in criminal court, was convicted of a lesser included offense for which direct filing was not permitted. The trial court erroneously denied the defendant's request for a posttrial fitness hearing under Penal Code section 1170.17, subdivision (c), and instead relied on the probation report to conclude that the defendant could appropriately be prosecuted as an adult. (Villa, supra, at pp. 452-453, 100 Cal.Rptr.3d 463.) The court's error was that it made the requisite determination without holding a statutorily-mandated hearing. The Court of Appeal found the error to be harmless under the Watson standard of prejudice. (Villa, supra, at p. 453, 100 Cal.Rptr.3d 463 ; People v. Watson(1956) 46 Cal.2d 818, 299 P.2d 243.) In the instant case, Suarez was directly charged in criminal court under former Welfare and Institutions Code section 707, subdivision (d) but, unlike Villa, there was no occasion for any court to assess his fitness for a juvenile disposition. Thus, in contrast to Villa, where the court assessed fitness but made a procedural error in doing so, here there was no error that may be deemed harmless. Nor would it be appropriate to conduct a fitness evaluation, in the first instance, on appeal. Accordingly, Villa's harmless error analysis is inapplicable.