**Danielle BARCHEERS, Petitioner—Appellant,**

v.

**Edward S. ALAMEIDA, Jr., Director, California Department of Corrections, Respondent—Appellee.**

No. 03–56728.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 2005 Pasadena, California.

Decided Aug. 9, 2005.

Patrick Morgan Ford, Esq., Attorney at Law, San Diego, CA, for Petitioner–Appellant.

Anthony Da Silva, DAG, Attorney General, Office of the California Attorney General, San Diego, CA, for Respondent–Appellee.

* The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Before: REINHARDT and CLIFTON, Circuit Judges, and WEINER *, Senior District Judge.

## MEMORANDUM **

California state prisoner Danielle Barcheers appeals the district court's denial of her petition for habeas corpus under 28 U.S.C. § 2254. Because the parties are familiar with the facts, procedural history, and arguments, we do not include them here except as necessary to explain our disposition. We affirm.

We review the district court's denial of Barcheers's petition de novo. *Campbell v. Rice,* 408 F.3d 1166, 1169 (9th Cir.2005) (en banc). Like the district court, we review Barcheers's petition under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") because the petition was filed after AEDPA's effective date. *Id.* Under AEDPA, we may not grant a habeas petition unless the decision of the state court "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ As to the voluntariness of Barcheers's confession, we turn first to the "crucial element" of police coercion. The California Court of Appeals found that "[n]othing in this record show[ed] that the officers physically or psychologically coerced Barcheers into making statements." The officers' statements to Barc-

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

heers, "[w]hen taken in context, ... did not constitute threats or promises of leniency," but rather "mere advice or urging by the police that it would be better to tell the truth." This finding, as distinguished from the court's ultimate determination of voluntariness, is "essentially a factual conclusion, which is entitled to a presumption of correctness" under AEDPA. *Rupe v. Wood*, 93 F.3d 1434, 1444 (9th Cir.1996).

In light of this and other state court findings, we regard Barcheers's statements to the police as distinguishable from those recently deemed involuntary in *Taylor v. Maddox*, 366 F.3d 992 (9th Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004). We note at the outset that in *Taylor*, the state courts' "fail[ure] to consider, or even acknowledge ... highly probative testimony cast[ ] serious doubt on the state-court fact-finding process and compel[led] the conclusion that the state-court decisions were based on an unreasonable determination of the facts." *Id.* at 1005. The *Taylor* panel thus "ha[d] an obligation to set those findings aside and ... make new findings." *Id.* at 1008. Here, in contrast, Barcheers does not allege that the California Court of Appeals overlooked or ignored highly probative evidence that was central to her claim. *Compare id.* at 1001. Indeed, we would regard such an allegation with some skepticism, as the state court deemed Barcheers's statements voluntary only after it "reviewed the tapes of the interviews." *Compare id.* at 1008 (indicating that the overlooked testimony in *Taylor*, while "very significant," did not provide "as good a look as [the court] could have had, if the officers had taped the entire interview," for example). Because Barcheers does not raise an intrinsic challenge to the factfinding process, the findings of the state court "are dressed in a presumption of correctness." *Id.* at 1000. Accordingly, in comparing Barcheers's petition to

Taylor's, we consider the facts found here by the California Court of Appeals with the facts found there by the *Taylor* panel.

The officers in *Taylor* arrested the defendant in the middle of the night, for a crime that had occurred many weeks earlier, and proceeded to question him for roughly three hours, without even a rest break, ignoring his repeated requests to speak with a lawyer and with his mother. *Id.* at 1013–14. The *Taylor* panel found "clear and convincing evidence in the record" that during the interrogation, one of the officers "brandished his ring in Taylor's face" and "threateningly mapped the potential consequences for Taylor if he did not confess." *Id.* at 1014.

■ The officers here, in contrast, arrested Barcheers while "in hot pursuit," *compare id.*, and questioned her for only twenty to thirty minutes before letting her go for approximately four and one-half hours and then resuming questioning at the police station. During the second interview, officers gave Barcheers two breaks and offered her a bandage when she observed that her dog bites, while not serious enough to have required stitches, were still bleeding. Unlike the officers in *Taylor*, the officers here did not ignore repeated requests to speak with a lawyer or parent; Barcheers made only one ambiguous reference to her right to counsel and did not ask to see or speak with her mother. Finally, as stated above, officers made no threats or promises of leniency.

We thus do not conclude, as the panel did in *Taylor*, that the state court's determination of voluntariness was an unreasonable application of Supreme Court precedent. Rather, we conclude that the California Court of Appeal reasonably determined that Barcheers's statements were voluntary in light of its materially different factual findings, which we must

presume to be correct under the "particularly deferential" standard of review prescribed by AEDPA.[1]  *Id.* at 1000.  As the *Taylor* panel explained:

> [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision.  Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Id.* at 1000 (citation omitted).

■  As to the admissibility of Barcheers's confession, which although voluntary was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), we conclude that constitutional law had not been so "clearly established" by the Supreme Court as to make the conclusion of the state court objectively unreasonable.  *See Campbell*, 408 F.3d at 1170 ("AEDPA's 'clearly established law' requirement limits the area of law on which a habeas court may rely to those constitutional principles enunciated in Supreme Court decisions.").

In *James v. Illinois*, 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990), the Supreme Court reversed a state court decision which had extended the impeachment exception to the exclusionary rule to "permit the prosecution to impeach the testimony of *all* defense witnesses."  493 U.S. at 309, 110 S.Ct. 648.  Although *James* could be broadly interpreted to prohibit the impeachment of *any* defense witness other than the defendant, several state courts have interpreted the decision more narrowly.  *Cf. Duhaime v. Ducharme*, 200 F.3d 597, 598 (9th Cir.1999) (characterizing the decisions of lower federal courts as relevant in assessing whether the state court's application is "unreasonable" and whether federal law is "clearly established").  These courts have found more limited extensions of the impeachment exception consistent with *James*, affirming the use of a defendant's unwarned statements to impeach defense witnesses who specifically relate the defendant's statements to them, or rely on those statements in forming an expert opinion.  *See Appling v. State*, 904 S.W.2d 912, 917 (Tex.Ct.App. 1995); *People v. Williams*, 181 Ill.2d 297, 229 Ill.Dec. 898, 692 N.E.2d 1109, 1128 (1998); *State v. DeGraw*, 196 W.Va. 261, 470 S.E.2d 215, 224 (1996); *Wilkes v. United States*, 631 A.2d 880, 890–91 (D.C.1993);

---

1. In light of the California Court of Appeals' presumptively correct findings regarding the lack of police coercion, Barcheers's personal characteristics and responses to questioning—even if identical to those of the defendant in *Taylor*—cannot support a determination that her confession was involuntary.  *See Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).  We nevertheless pause here to respond to the dissent's assertion that Barcheers was in these respects indistinguishable from Taylor.

Although Barcheers, like Taylor, was relatively young, the California Court of Appeals found that "her age d[id] not establish that she lacked the understanding, competency, or other ability to make a voluntary statement."

The same was true of her mental disorders: no "authority or evidence in the record ... show[ed] that [they] precluded her from exercising a free will."  In fact, Barcheers's expert psychologist "gave testimony to the contrary."

Further, although Barcheers, like Taylor, began to cry during the initial interview, she thereafter provided responses to questions which the trial court described as "coherent" and "thoughtful."  And unlike Taylor, Barcheers did not "just start[] agreeing."  366 F.3d at 1003.  Instead, she supplied details in response to open-ended questions and expressed her disagreement with inaccurate statements.  We believe these facts further distinguish *Taylor*.

*see also James*, 493 U.S. at 311–12, 110 S.Ct. 648 (explaining that the Supreme Court "has carved out exceptions to the exclusionary rule" where the "balance" between the truthseeking function of a criminal trial and the deterrent aim of the exclusionary rule favors admissibility). Given these decisions, we conclude that the consistent conclusion reached by the California Court of Appeals was not objectively unreasonable. *Cf. Clark*, 331 F.3d at 1071 ("The very fact that circuit courts have reached differing results on similar facts leads inevitably to the conclusion that the Arizona court's rejection of Clark's claim was not objectively unreasonable.").

■ Finally, as to the voluntariness and admissibility of Barcheers's statements to the probation officer, we conclude that Barcheers has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Although the deputy probation officer interviewed Barcheers the day after she had provided unwarned statements to the police, the deputy's testimony made clear that at the start of each interview, "[s]he fully advised [Barcheers] of her *Miranda* rights." The fact that Barcheers "ch[o]se to speak after being informed of h[er] rights is, of course, highly probative" in evaluating the voluntariness of her statements. *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

■ Further, although Barcheers's statements were admitted for purposes of impeachment under *People v. Macias*, 16 Cal.4th 739, 66 Cal.Rptr.2d 659, 941 P.2d 838 (1997), a case decided after her interviews, we are not persuaded that their admission violated her rights to due process because *Macias* was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers v. Tennessee*, 532 U.S. 451, 461, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)) (internal quotation marks omitted). To the contrary, prior to *Macias*, the California Supreme Court had expressly "refused to address the question whether statements made to a probation officer in preparation for a fitness hearing could be used to impeach a minor who voluntarily testifies falsely at her subsequent trial," *Macias*, 66 Cal. Rptr.2d 659, 941 P.2d at 844 (citing *Ramona R. v. Superior Court*, 37 Cal.3d 802, 210 Cal.Rptr. 204, 693 P.2d 789, 793 (1985)), and the U.S. Supreme Court had allowed the use of otherwise inadmissible statements for the limited purpose of impeaching a testifying defendant, *see, e.g., United States v. Havens*, 446 U.S. 620, 626, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980); *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). Accordingly, we conclude that Barcheers has failed to make the necessary showing and therefore decline to expand the certificate of appealability.

**AFFIRMED.**

Judge REINHARDT.

I dissent. *Taylor v. Maddox*, 366 F.3d 992 (9th Cir.), *cert. denied*, —— U.S. ——, 125 S.Ct. 809, 160 L.Ed.2d 605 (2004), compels the conclusion that Barcheers' confession was involuntary. I cannot agree with the majority's attempts to distinguish *Taylor*. Although the majority tries to minimize the degree of involuntariness involved here, this case presents at least as much—if not more—evidence of involuntariness as *Taylor*. Both Taylor and Barcheers were arrested late at night and interrogated without the presence of an attorney or a parent. *Id.* at 997. Both were desperate and upset during the interrogation. *Id.* at 1003. Both were also told that they would be better off if they con-

fessed. *Id.* But, while Taylor was sixteen, Barcheers had barely turned fifteen when she was arrested. *Cf. id* at 996. She was detained later at night, ultimately interrogated for a longer period of time, cried constantly during a portion of her interrogation, and had not slept for a full twenty-four hours before the interrogation commenced. While Taylor suffered from no mental health problems and was not a victim of sexual abuse, Barcheers had just recently been recommended for hospitalization because of her severe depression with psychotic features and various other serious mental disorders. She had also suffered extreme sexual abuse throughout her lifetime, and her interrogators were physically similar to her abusers—older men who exercised authority over her. *Cf. id* at 997. Unlike Taylor, Barcheers was strapped to a gurney, handcuffed, and barely clothed during the initial portion of her interrogation and was suffering from untreated and painful wounds caused by police dogs. In light of the totality of these circumstances, *see id.* at 1015, the holding in *Taylor* requires this court to find that Barcheers' interrogation was coercive (even if the police did not explicitly threaten her or promise her leniency), that her will was overborne, and that her statement was thus involuntary. The state court's contrary determination was an objectively unreasonable application of clearly established Supreme Court law.

For the foregoing reasons, I respectfully dissent.