Filed 3/3/25  P. v. Lek CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDREW LEK,<br><br>    Defendant and Appellant. | H051364<br>(Monterey County<br> Super. Ct. No. SS071632A) |

In 2008, appellant Andrew Lek pleaded no contest to attempted murder (Pen. Code, §§ 664, 187, subd. (a))[1] and voluntary manslaughter (§ 192, subd. (a)), along with several firearm enhancements, and was sentenced to 30 years in prison.  In 2023, Lek filed a petition for resentencing under section 1172.6, alleging that he could no longer be convicted of manslaughter or attempted murder under current law.  During the evidentiary hearing, the trial court considered as evidence transcripts from Lek's parole suitability hearing where he stated on the record that he was the sole shooter.  Based on this evidence, the trial court denied the petition.  Lek appeals, arguing that his statements at the parole hearing should have been subject to use immunity under *People v. Coleman* (1975) 13 Cal.3d 867 (*Coleman*).  Finding no error on this record, we will affirm.

---

[1] Unspecified statutory references are to the Penal Code.

## I.     BACKGROUND

**A.     *Lek's Conviction***

In 2008, Lek pleaded no contest to attempted murder (§§ 664, 187, subd. (a)) with an allegation that he personally used a firearm (§ 12022.5, subd. (a)) and voluntary manslaughter (§ 192, subd. (a)) with an allegation that he personally and intentionally discharged a firearm (§ 12022.53, subd. (c)).  He was sentenced to a total term of 30 years in prison.

**B.     *The Petition for Resentencing***

In 2023, Lek filed a form petition for resentencing under then-section 1170.95 (now renumbered to section 1172.6).  In the petition, Lek alleged that the charges filed permitted the prosecutor to proceed under a theory of imputed malice, that he was convicted by plea in lieu of a trial at which he could have been convicted of murder or attempted murder, and that he could no longer be convicted of murder or attempted murder under the changes made to sections 188 and 189 by Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), effective January 1, 2019.  After receiving the facially sufficient petition, the trial court appointed counsel and set the matter for an evidentiary hearing after issuing an order to show cause.

In preparation for the evidentiary hearing, the district attorney submitted as evidence a transcript from Lek's November 2021 parole suitability hearing.[2]  During the hearing, Lek was asked about his commitment offenses, and he explained that he "shot at two individuals in a car" because he believed his "life was at risk."  Lek said that he "decided to take that upon myself to, uh, shoot first and I killed one . . . person by the name of Rubin . . . .  And I never found out that the second victim's name for attempted murder."  Lek explained that before the incident, he and another man (identified in the

---

[2] Although sentenced to a determinate term, Lek was 17 years old at the time of the offense and was entitled to a youth offender parole hearing.  (See § 3051, subd. (b)(1).)

transcript only as Rodriguez) had seen two individuals outside an apartment complex. When he and Rodriguez left the apartment complex in a car, the "next thing you know, we seen [the two individuals] behind us and the lane turn into three lanes and they started driving on the side of us. That's when I decided to shoot, . . . before I get shot." Lek explained that he thought the men in the other car were "rival gang members" but conceded that he never saw either display a gun. Questioned about Rodriguez's explanation that the shooting was prompted by the victims' loud music and tailgating, Lek maintained that he believed the victims were going to kill him. Although the commissioners noted the deceased victim had been killed by bullets of two calibers and questioned whether Lek "got loyalty to Mr. Rodriguez," Lek reiterated he was the sole shooter.

## C.     *The Evidentiary Hearing*

At the evidentiary hearing, the prosecutor moved to admit the parole suitability hearing transcript into evidence. Defense counsel objected to the admissibility of the transcript, arguing that the statements that Lek had made during the hearing were subject to use immunity and should not be used against him in the resentencing proceedings and that alternatively, the statements were unreliable and therefore inadmissible.

The trial court overruled the defense's objections and considered the parole suitability hearing transcript, concluding that the transcript reflected that Lek "shot at two individuals in a car, he was in possession of a firearm, [and] he indicate[d] that he did not see a weapon or act in self-defense and fired the weapon, killing a human being." Finding that Lek was the "actual shooter," the trial court determined that the People had met their burden to prove beyond a reasonable doubt that Lek remained guilty of murder on a valid theory.

## II.     DISCUSSION

Lek's sole argument on appeal is that the trial court erred by admitting the transcript of the parole suitability hearing because his statements should be subject to use

3

immunity and should not be introduced against him at the resentencing proceeding. Finding no error in the admission of the transcript, we affirm the trial court's denial of his petition for resentencing.

## A.    *Legal Principles and Standard of Review*

Effective January 1, 2019, the Legislature enacted Senate Bill 1437, which amended the murder law under sections 188 and 189 " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Curiel* (2023) 15 Cal.5th 433, 448.)  Former section 1170.95, now 1172.6, created a procedural mechanism for those convicted of crimes under now-invalid theories of imputed malice to seek vacatur of their convictions and for resentencing.  (*Curiel*, at pp. 449–450; § 1172.6, subd. (a).)  Once a petitioner has stated a prima facie case for relief, the court must issue an order to show cause (*id.*, subd. (c)) and set the matter for an evidentiary hearing where the prosecutor must prove beyond a reasonable doubt that the petitioner remains guilty of murder or attempted murder under current law.  (*Id.*, subd. (d)(3).)  At the hearing, the prosecutor may consider admissible evidence admitted at any prior hearing or trial or "new or additional evidence."  (*Ibid.*)

"It is well settled that a defendant's . . . testimony at a parole hearing fall[s] within the ambit of ' "new or additional evidence." ' " (*People v. Zavala* (2024) 105 Cal.App.5th 366, 373 (*Zavala*); *People v. Mitchell* (2022) 81 Cal.App.5th 575, 586 (*Mitchell*); *People v. Myles* (2021) 69 Cal.App.5th 688, 703 (*Myles*).)  On appeal, " '[w]hether use immunity exists and whether a statement is involuntary within the meaning of due process are questions of law we review de novo.' " (*Zavala*, at p. 373.)  And "[w]e ask 'whether substantial evidence, defined as reasonable and credible evidence of solid value, has been disclosed, permitting the trier of fact to find guilt beyond a reasonable doubt.' " (*People v. Hill* (2024) 100 Cal.App.5th 1055, 1066.)

4

**B.** *Use Immunity under* **Coleman**

Emphasizing the importance of demonstrating insight at a parole suitability hearing, Lek argues that permitting the People to thereafter use his testimony from the suitability hearing at a later proceeding for resentencing under section 1172.6 is fundamentally unfair. He argues that his prior statements should be inadmissible and subject to use immunity under the judicial rule of exclusion announced in *Coleman*, *supra*, 13 Cal.3d 867. Multiple Courts of Appeal have considered and rejected this same argument, reasoning that a petitioning defendant has no Fifth Amendment right against self-incrimination in a section 1172.6 resentencing proceeding. (*Zavala*, *supra*, 105 Cal.App.5th at p. 376; *Myles*, *supra*, 69 Cal.App.5th at pp. 704–706; *People v. Anderson* (2022) 78 Cal.App.5th 81, 93 (*Anderson*); *People v. Duran* (2022) 84 Cal.App.5th 920, 930–931 (*Duran*); *Mitchell*, *supra*, 81 Cal.App.5th at p. 588, but see *id.* at p. 602 (dis. opn. of Stratton, P. J.).) Irrespective of the scope of Fifth Amendment protection in a resentencing proceeding, we agree with *Duran*'s alternative rationale that an otherwise voluntary prior statement remains admissible under *Coleman* to rebut or impeach a petitioning defendant's allegation that he cannot now be convicted because of changes to section 188 or 189 wrought by Senate Bill 1437. (*Duran*, at pp. 931–932.) With no basis to consider Lek's statements at the parole suitability hearing to have been involuntary, we discern no error in the court's admission of the transcript of those statements.

In *Coleman*, the California Supreme Court declared "as a judicial rule of evidence" that testimony given at a probation revocation hearing held before the disposition of a criminal charge arising from the alleged probation violation is inadmissible on "subsequent proceedings on the related criminal charges, save for purposes of impeachment or rebuttal." (*Coleman*, *supra*, 13 Cal.3d at p. 889.)

*Coleman*'s rule of exclusion was based in part on the need to accommodate constitutional rights in concurrent proceedings. First, *Coleman* examined the

5

probationer's constitutional right to testify at a probation revocation hearing, which due process requires for a "meaningful opportunity to be heard and to explain one's actions." (*Coleman*, *supra*, 13 Cal.3d at p. 873.) The policy underlying a probationer's right to be heard is "to assure informed, intelligent and just revocation decisions." (*Ibid.*) And another broad policy objective underlying the constitutional guarantee of the right to be heard "is to enhance the chance of rehabilitating probationers or parolees by treating them with 'basic fairness,' " preventing arbitrary or otherwise unfair treatment. (*Id.* at p. 874.) *Coleman* found that these policies would be "seriously undermined when a probationer is deterred by the possibility of self-incrimination from taking advantage of his right to be heard at his probation revocation hearing." (*Ibid.*)

Next, *Coleman* examined two policy considerations underlying the privilege against self-incrimination that were adversely affected by permitting the probationer's testimony at the revocation hearing to be introduced at a subsequent criminal trial: first, "[t]he heavy burden . . . placed upon the prosecution in a criminal trial to prove through its own investigation the guilt of the defendant may be substantially lightened if the prosecution is allowed to take advantage of the defendant's testimony at a prior probation revocation hearing" (*Coleman*, *supra*, 13 Cal.3d at p. 876), and second, the " 'unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt.' " (*Id.* at p. 878.)

But *Coleman* itself limited its judicial rule of evidence by specifying that it did not preclude the use of otherwise inadmissible statements to "impeach or rebut clearly inconsistent testimony" offered by a defendant. (*Coleman*, *supra*, 13 Cal.3d at p. 892; see also *Duran*, *supra*, 84 Cal.App.5th at p. 931.) The privilege against self-incrimination does not "encompass a right of an accused to lie in his own behalf." (*Coleman*, at p. 892.) This is consistent with long-standing Fifth Amendment jurisprudence that permits impeachment with prior statements, so long as the statements were not coerced. (See, e.g., *People v. Macias* (1997) 16 Cal.4th 739, 753–754 [holding

6

that "substantive use immunity" barring use of minor's statements to a probation officer in preparation for juvenile fitness hearings nonetheless permitted "the limited use" of such statements "to impeach the same minor defendant's voluntary, inconsistent trial statements"]; but see *New Jersey v. Portash* (1979) 440 U.S. 450, 459–460 [holding that "[t]estimony given in response to a grant of legislative immunity is . . . coerced testimony" that may not be used even as impeachment].)

In his petition for resentencing, Lek specifically declared under penalty of perjury that he "could not presently be convicted of murder or attempted murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019."  Implicit in this declaration is the assertion that, at a minimum, Lek was neither an actual killer nor an aider/abettor who acted with express or implied malice.  To be sure, this was a boilerplate declaration, but it is on the prima facie adequacy of that factual showing that Lek was afforded an evidentiary hearing under section 1172.6, subdivision (d)(3) at which the prosecution bore the burden of proof beyond a reasonable doubt.  The prosecution's burden at the evidentiary hearing is to rebut the veracity or reliability of Lek's declaration.  His testimony at the parole suitability hearing attesting that he alone was the shooter is clearly inconsistent with the allegations in his petition and would be admissible to rebut these allegations under the *Coleman* rationale.  (*Duran*, *supra*, 84 Cal.App.5th at pp. 931–932.)[3]

---

[3] In arguing for the exclusion of his prior statements, Lek also relies in part on *Simmons v. United States* (1968) 390 U.S. 377.  Acknowledging the broad language in *Simmons*—suggesting that immunity might apply whenever constitutional rights are in conflict—*Coleman* noted that the United States Supreme Court in later decisions found that " '[a]lthough a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose' " between the two rights.  (*Coleman*, *supra*, 13 Cal.3d at p. 880.)  The " 'threshold question' " was " 'whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.' "  (*Ibid*.)

Lek fleetingly contends that his statements at the parole suitability hearing were involuntary but does not develop this point or support it with citation to authority. While we agree that a truly involuntary statement would be inadmissible as a matter of due process, at a minimum (see *People v. Jimenez* (2021) 73 Cal.App.5th 862, 876 ["involuntary confession is inadmissible for any purpose"]), we see no basis to deem statements at a parole suitability hearing to be categorically involuntary, given the purpose of the hearing and the legal protections at least theoretically afforded the defendant.

To determine whether a confession is involuntary, a court must look at " ' " 'the uncontradicted facts surrounding the making of the statements to determine independently whether the prosecution met its burden and proved that the statements were voluntarily given without previous inducement, intimidation or threat.' " ' " (*People v. McWhorter* (2009) 47 Cal.4th 318, 346.) Here, unlike the concurrent revocation and trial proceedings at issue in *Coleman*, in a section 1172.6 proceeding the fact of a resentencing petitioner's liability—under former law—has already been adjudicated. The ultimate issue at a parole hearing is whether a defendant's release "will pose an unreasonable risk of danger to society" rather than whether the defendant is guilty of the offense underlying the current prison term. (Cal. Code Regs., tit. 15, § 2281.) Accordingly, a defendant at a parole hearing may decline to discuss the circumstances of his offense, and by law such a "refusal shall not be held against the prisoner." (Cal. Code Regs., tit. 15, § 2236; § 5011, subd. (b) ["The [Board of Parole Hearings] shall not require, when setting parole dates, an admission of guilt to any crime for which an inmate was committed"].)

We recognize, however, that "California encourages inmates to participate fully in parole hearings so that parole commissioners can make a fully informed decision about suitability for parole." (*Mitchell*, *supra*, 81 Cal.App.5th at p. 602 (dis. opn. of Stratton, P. J.).) And an inmate's degree of insight into his commitment offense is a valid

8

consideration for the Board of Parole Hearings when determining suitability. (*In re Shaputis* (2011) 53 Cal.4th 192, 218–219 ["[c]onsideration of an inmate's degree of insight is well within the scope of the parole regulations" when determining suitability for parole]; *In re Lawrence* (2008) 44 Cal.4th 1181, 1220 ["the attendant changes in a prisoner's maturity, understanding, and mental state" are highly probative to whether an inmate remains dangerous].) So we recognize the tension between a defendant's desire to be released on parole, which may require an honest recognition of the gravity of the crimes, and a desire to be resentenced under section 1172.6, which essentially relies on a finding that a defendant is *less* culpable—i.e., that the defendant is either not the actual killer or was convicted under theories of imputed malice.

Voluntariness, however, " 'does not turn on any one fact, no matter how apparently significant, but rather on the "totality of [the] circumstances." ' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1078.) Questioning by the commissioners was confrontational and overtly skeptical about topics ranging from the details of juvenile offenses, Lek's present gang involvement, and the reasons for the shooting, but not about Lek's role in the offense. On confirming his convictions for attempted murder and voluntary manslaughter, Lek was first asked, "What did you do?" It was at this point that Lek identified himself as the shooter, stating that he "decided to take that upon myself to, uh, shoot first and I killed . . . one person." And despite this acknowledgment, he maintained that he did so in the honest belief that the two men he fired at were rival gang members intent on killing him. Even when aggressively challenged on other points by an apparently incredulous presiding commissioner, Lek did not waver in his answers. Lek consistently denied rule violations that the commissioners attributed to him, resisted their efforts to elicit the identity of the person who supplied the firearm used in the shooting, denied involvement in specific juvenile offenses, and denied ongoing gang affiliation, even in the face of confrontational and openly skeptical questioning.

9

If we were to accept as true Lek's general contention that counsel at parole suitability hearings typically advise their clients to be " 'unflinchingly self-critical' " in discussing their offense and to avoid shifting blame, we do not see evidence of that dynamic producing a coercive effect at this hearing. Notwithstanding the inducements Lek posits, he both resisted the repeated suggestions that he did *not* fire in self-defense and maintained in essence that he pleaded no contest to attempted murder despite lacking malice. (See *In re Christian S.* (1994) 7 Cal.4th 768, 773 [reaffirming that "an actual but unreasonable belief in the imminent need for self-defense" negates malice " 'so that the chargeable offense is reduced to manslaughter' "].) The totality of the circumstances here does not support a claim that Lek's statements were involuntary or were the product of threats or coercion.

Aside from his claim of use immunity, Lek raises no other challenge to the trial court's determination that he is guilty under a valid theory of murder.[4] Finding no error in its admission, the parole hearing transcripts are substantial evidence that supports the trial court's conclusion that Lek was the actual killer and therefore still liable for murder despite Senate Bill 1437's changes to section 188 and 189. (See *People v. Strong* (2022) 13 Cal.5th 698, 710.)

## III. DISPOSITION

The order denying the petition for resentencing is affirmed.

---

[4] For the first time in his reply brief, Lek briefly argues that the unreliability of his statements to the Board of Parole Hearings makes inapplicable any hearsay exception under the Evidence Code. But as this specific argument was not raised in the trial court or in his opening brief, they have been forfeited. (Evid. Code, § 353; *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 408.)

_____

LIE, Acting P. J.

WE CONCUR:

_____

WILSON, J.

_____

BROMBERG, J.

*People v. Lek*
H051364